(No. 60884.—

J. L. SIMMONS COMPANY, INC., *ex rel.* HARTFORD INSURANCE GROUP *et al.*, Appellee, v. FIRE-STONE TIRE & RUBBER COMPANY, Appellant and Cross-Appellee (J. L. Simmons Company, Inc., Cross-Appellant).

*Opinion filed July 17, 1985.—Rehearing denied*
*September 27, 1985.*

McConnell, Kennedy, Quinn & Johnston, of Peoria, and Armstrong, Winters, Prince, Featherstun & Johnson, of Decatur (W. Thomas Johnston, of counsel), for appellant and cross-appellee Firestone Tire & Rubber Company.

Jay H. Janssen, Jerelyn D. Maher, and Cassidy & Mueller, of Peoria (David B. Mueller and John E. Cassidy III, of counsel), for appellee and cross-appellant J. L. Simmons Company.

JUSTICE SIMON delivered the opinion of the court:

John Boone (Boone), an employee of J. L. Simmons Company, Inc. (Simmons), was working for Simmons as an industrial carpenter at the Firestone Tire and Rubber Company (Firestone) plant in Decatur when he was injured while attempting to install a wooden beam at the plant. Boone filed suit in the circuit court of Peoria County against Firestone. He alleged that while lifting the beam he stepped on a strip of visqueen, a plastic liner used at the Firestone plant to separate raw slabs of rubber, slipped and fell along with the beam to the ground, permanently injuring his back. Firestone answered that the accident occurred not as a result of the visqueen but because Simmons supplied an insufficient number of men to carry the beam. It claimed that Boone twisted his back and was injured because of the great weight of the beam he was trying to carry.

Based on that allegation Firestone brought a third-party action against Simmons for indemnity or contribution. Simmons had previously established a statutory lien (Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b)) against any damages awarded to Boone up to the amount of a compensation settlement agreement he entered into with Simmons. That agreement, besides settling on a sum compensating Boone for his injury, entitled Simmons to (i) reimbursement up to the settlement amount from any awards which might be granted against Firestone and (ii) complete indemnification from Boone for any additional liability imposed on Simmons by way of contribution to Firestone. When Simmons was brought into the action as a third-party defendant, it requested that it be

aligned along with Boone as a plaintiff because its interest was the same as his, especially in view of their agreement and also because their explanation of how the accident occurred was identical. Boone had no objection to the request, and, notwithstanding Firestone's objection, the Simmons motion was granted and the parties were realigned reflecting their true positions with respect to how the accident took place. Firestone then retitled its third-party action as a counterclaim. Following trial, the jury returned a verdict for Boone in the amount of $501,000. The jury also found Boone to be comparatively negligent to the extent of 33 1/3%. Finally, the jury returned a finding that Simmons was required to contribute 50% to the amount Firestone owed Boone on account of its own negligence.

On appeal, the judgment in favor of Boone was affirmed but Firestone's right to contribution was reversed and remanded to the circuit court for a new trial on the contribution issue (126 Ill. App. 3d 859). The appellate court determined that the jury instruction concerning contribution allowed for a double reduction for the same acts and was therefore erroneous. We allowed Firestone's petition for leave to appeal (94 Ill. 2d R. 315(a)), and we now affirm the appellate court's decision.

Firestone first contends that the realignment of Simmons from a third-party defendant to a coplaintiff both violated the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) (the Act) and allowed Simmons trial advantages which it would not have enjoyed as a third-party defendant. It relies on section 5(b) of the Act, which, relevant to this appeal, provides:

> "In the event the employee or his personal representative fails to institute a proceeding against such third person at any time prior to 3 months before such action would be barred, the employer may in his own name or in the name of the employee, or his personal representative,

commence a proceeding against such other person for the recovery of damages on account of such injury or death to the employee ***." (Ill. Rev. Stat. 1981, ch. 48, par. 138.5(b).)

Firestone contends that the plain language of the Act precludes Simmons joinder as a coplaintiff because Boone himself brought an action against Firestone prior to the three-month period prescribed by the Act.

Section 5(b) does not explicitly apply to the situation presented by this appeal. The section forbids the filing of a suit by the employer prior to three months before the expiration of the limitations period. Simmons, though, did not file the original action. Instead, Boone filed first against Firestone, and later developments brought Simmons in as a party to the action on the motion of Firestone. Therefore, Simmons' alignment as a plaintiff did not violate the express language of section 5(b).

We have been unable to find any case which has directly considered this problem. Absent controlling precedent and explicit statutory language, we must look to the intent of the legislature when it passed the Act, with special attention to that portion of section 5(b) which forbids an employer from bringing the original action prior to 21 months following the accident. (See, *e.g., People v. Boykin* (1983), 94 Ill. 2d 138, 141.) The Act is primarily meant to provide compensation for employees who are injured while working, regardless of fault. "The object of the act is the allowance of compensation for accidental injuries to employees as promptly and cheaply as may be." (*Liquid Carbonic Co. v. Industrial Com.* (1933), 352 Ill. 405, 410.) An employer, then, may be required to pay an injured employee even though it was without fault. Section 5(b) allows both the employer and the employee an opportunity to reach the true offender while preventing the employee from obtaining a double recovery. See, *e.g., Ullman v. Wolverine Insurance Co.* (1970), 48 Ill. 2d

1, 7.

Section 5(b) replaced the common law right of the employer to reach a negligent third party for money it was required to pay in response to a workers' compensation claim.

> "In the absence of a valid statute creating the right, a non-negligent employer, who has been required to pay workmen's compensation to an employee injured by the negligence of a third-party tort-feasor, has a *common law right of subrogation* to the claim of the employee against the third-party tort-feasor for reimbursement of the amount of workmen's compensation paid to the employee. (*Geneva Construction Co. v. Martin Transfer and Storage Co.* 4 Ill. 2d 273.) In the case cited we also noted that the employer's common-law right of subrogation had been supplanted by a mode of statutory subrogation \*\*\*. Thus, the status of the non-negligent employer is the same under section 5(b) as it would have been under the common law, namely, subrogee to the claim of his employee against the third-party tort-feasor." (*McCormick v. Zander Reum Co.* (1962), 25 Ill. 2d 241, 244.)

The employer had and continues to have a right to the money it pays in workers' compensation if it was not the sole cause of the accident.

Section 5(b)'s limitation on the employer's right to bring the original action against any third party until the employee has been given ample opportunity to institute his own action reflects the legislature's desire to protect the employee from an employer who desires only to recoup the amount it has paid in compensation and nothing more. In both *Sjoberg v. Joseph T. Ryerson & Son* (1956), 8 Ill. App. 2d 414, and *Arnold Lies Co. v. Legler* (1960), 26 Ill. App. 2d 365, the appellate court concluded that the employer could not join the action of its employee but could only file a lien in the action for payments it had already made when the employee did not desire the participation of the employer. These two opin-

ions correctly reflect the purpose of the limitations set forth in section 5(b), which is the protection of the injured employee's choice of how to proceed with any claims which might exist against parties other than the employer.

*Sjoberg* and *Legler* are not applicable here for the following reasons: First, Simmons did not seek status in the lawsuit by intervention; rather it was brought in by Firestone. Second, the views of Simmons and Boone with regard to the cause of the accident were identical. Third, the Simmons-Boone agreement, in effect, perfectly aligned the interests of the employer and employee. The statute's protection against unwanted intrusion by the employer was not offended because Boone agreed to the joinder. Therefore, section 5(b) was not violated by the joinder of the two parties as plaintiffs.

Firestone claims, though, that the alignment of the parties worked to its prejudice because it allowed Simmons opportunities to examine witnesses and ask questions it would not have been able to if it had been aligned as a third-party defendant. In addition, Firestone complains that both Simmons and Boone were allowed to make closing arguments to the jury, which Firestone contends improperly influenced the jury. These contentions must also be rejected because Simmons received only what it was entitled to. Simmons would have been allowed to cross-examine witnesses and give a final argument as a third-party defendant. Moreover, our Rule 233 (87 Ill. 2d R. 233) allows a trial judge discretion in selecting the order of appearance in third-party proceedings. We find no fault in the circuit court's actions as Simmons' change in position only reflected its true position in the lawsuit.

Firestone also claims that the appellate court erred in determining that numerous trial errors which it acknowledged to have taken place were harmless. It first con-

tends that Mary Campbell, Firestone's "primary" witness, was improperly impeached during cross-examination. During cross-examination, she was questioned about statements made by her husband, an employee of Firestone. These statements were directed at what Boone had previously told her husband about how the accident happened and conflicted with Mrs. Campbell's testimony on direct examination that Boone had told her that the cause of the accident was Simmons' failure to supply enough manpower to lift the heavy beam. The appellate court correctly concluded that the evidence relating to the husband's statements was improperly admitted, as it was clearly hearsay and could not be admitted as impeaching Mrs. Campbell because the statements were not her own.

Firestone also argues that a statement made by Boone during a discovery deposition was improperly excluded. Boone testified that "[t]his could have been prevented to the bottom line if I could have had another man for a stinking $110." The appellate court concluded that the statement should have been admitted but that its exclusion was harmless error.

New trials can be ordered only when the evidence improperly admitted appears to have affected the outcome. (See, *e.g., Both v. Nelson* (1964), 31 Ill. 2d 511; *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121.) While we would like all trials to be conducted error free, no useful purpose would be served by granting a new trial when the record reveals that the errors did not change the result reached by the jury. "It is not every error, of course, that will require a reversal. Where it appears that an error did not affect the outcome below, or where the court can see from the entire record that no injury has been done, the judgment or decree will not be disturbed. [Citations.]" (31 Ill. 2d 511, 514.) In this case the admission of the hearsay statements used to cross-examine Mrs. Campbell

and the statement of Boone which was not admitted did not affect the result of this case. They were both minor and did not go to the heart of the dispute. Mrs. Campbell, although defendant's major witness, was not significantly damaged by the statement her husband had made that Boone was injured when he slipped on a piece of visqueen, and the statement was no different than the position taken by the plaintiffs throughout the trial. The jury, then, still had to decide which of several witnesses' testimony was true.

Likewise, the exclusion of Boone's statement was harmless error. That statement was ambiguous. It might have referred to another person helping pick up the beam or it could have been a reference to additional personnel for clean-up of the visqueen. The ambiguity would not have changed either the type of information available to the jury or the result. Even if Boone's statement is viewed in the light most favorable to Firestone, the jury would still have to determine whether the visqueen contributed to the accident. The evidentiary errors, then, did not affect "the character and amount of proof in the record tending to support the finding and judgment of the court and the amount and character of the evidence contra." *Grosh v. Acom* (1927), 325 Ill. 474, 495.

Firestone next argues that an instruction on missing witnesses was improperly given, prejudicing its position in the suit. The appellate court concluded that it was harmless error to instruct the jury in this manner. We are restrained from reaching this question, though, because Firestone proposed the disputed instruction and it was given in that form at its request. It is fundamental to our adversarial process that a party cannot claim error when it induced the trial judge's mistake. See *Auton v. Logan Landfill* (1984), 105 Ill. 2d 537.

Firestone also contends that the expert testimony of Richard Bliss, a vocational counselor, was improperly ad-

mitted. It maintains that Bliss' testimony and opinions were all based on hearsay evidence derived from Boone during interviews conducted by Bliss. Based upon this court's opinion in *Wilson v. Clark* (1981), 84 Ill. 2d 186, the appellate court concluded that the testimony was properly admitted. We agree with the appellate court because expert testimony may be based on data presented to the expert " 'outside of court and other than by his own perception.' " (84 Ill. 2d 186, 193, quoting Fed. R. Evid. 703, Advisory Committee Note.) The fact that the data was obtained from Boone is relevant only to the weight it should be given, a jury decision, and not to its admissibility. Therefore, the appellate court correctly decided that the expert testimony was properly admitted.

Finally, Firestone argues that the jury determination that Simmons should be required to contribute 50% of the damage award was correct and that the appellate court erred when it reversed this decision and required a new trial on this issue. First, Firestone contends that Simmons failed to object to the instruction and that the appellate court improperly reviewed the issue because Simmons had waived it at trial. This contention is not supported by the record. Simmons objected to the instruction on numerous occasions because it argued that it allowed for "double contribution" on the part of the plaintiffs. These objections preserved Simmons' right to appeal the propriety of the instruction.

Firestone also claims that the instruction was proper. The instruction was:

> "John Boone was the agent of the counter-defendant, J. L. Simmons Co., at the time of this occurrence. Therefore, any act or omission of the agent at that time was in law the act or omission of the counter-defendant, J. L. Simmons Co., Inc."

It argues that this instruction, along with the burdens instruction, adequately informed the jury of the correct

standard to be applied.

We disagree with Firestone's position because the instruction allowed Boone's negligence to be deducted first from the original award and then allowed the same acts to be subtracted from the amount Firestone was required to pay. While Firestone is correct in arguing that the burdens instruction correctly required it to prove Simmons' negligent acts prior to a contribution award, the instruction allowed consideration of Boone's negligence which had already been deducted from the first award. Following the reasoning of this court's decision in *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 14, we are required to follow "governing equitable principles [which] require that ultimate liability for plaintiff's injuries be apportioned on the basis of the relative degree to which *** [each defendant's] conduct proximately caused them." The instruction did not follow this principle because it allowed the jury to reduce the original award 33 1/3% based on Boone's negligence and then allowed this reduced award to be split between Firestone and Simmons based, in some unknown ratio, upon Boone's same acts of negligence which had already been deducted from the original award. This is improper, and we must uphold the appellate court's reasoning in reversing the contribution award and remanding that portion of the case to the circuit court for a new trial.

For these reasons the judgment of the appellate court is affirmed.

*Judgment affirmed.*