**In re Rollin Ernst LUTTERBEIN DBA Lutterbein's Carpet & Interiors, Debtor.**

**Bankruptcy No. 91–30483.**

United States Bankruptcy Court, N.D. Ohio, W.D.

July 21, 1992.

Randy Reeves, Lima, Ohio, for debtor.

Arnold Gottlieb, Toledo, Ohio, for Eagle Flooring.

Anthony Disalle, Toledo, Ohio, trustee.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Objection to Chapter 13 Plan Confirmation by Eagle Flooring Distributors, Inc. (hereinafter "Eagle"). At the Hearing, the parties had the opportunity to present the arguments and evidence they wished the Court to consider in reaching its decision. The Court has reviewed the evidence and arguments presented, as well as the entire record in this matter. Based upon that review, and for the following reasons, the Court Denies the Objection to Plan Confirmation brought by Eagle.

### FACTS

Rollin Ernst Lutterbein (hereinafter "Lutterbein") owns and operates Lutterbein's Carpet and Interiors. The major aspects of the business, during the period in question, were the sale of floor coverings and the sale of custom picture frames.

Eagle was Lutterbein's major supplier of materials for the floor covering aspect of the business. Traditionally, Eagle supplied the materials on an unsecured credit basis. Lutterbein fell behind in his payments to Eagle, and Eagle became concerned with the increasing debt. On March 28, 1990, a representative of Eagle appeared unannounced at Lutterbein's business and insisted that Lutterbein enter into an agreement to secure his debt to them.

The financing statement and security agreement contained language which would have included all of the inventory and work in process involved in Lutterbein's business. Since none of the material related to the picture framing business were in any way connected to Eagle, Lutterbein insisted that the items covered under the security agreement be limited to floor covering materials only.

Lutterbein and the Eagle representative agreed to a modification of the agreement

which Eagle had prepared. They inserted the words "floor covering" to modify the agreement and they both initialed the change. The portion of the finance statement and security agreement which delineates what types of property were covered by the agreement, when modified, read as follows:

"Floor Covering" (the added term) inventory which is held for sale or lease, including that held for display or out on lease on [sic] consignment, or to be furnished under contract of service, work in process or inventory used or consumed in debtor's business.

Accounts receivable, contract rights, purchase orders, rights of lien, notes, drafts, acceptances and other forms of obligations and receivables.

On February 12, 1991, Lutterbein filed for bankruptcy under Chapter 13 of the Bankruptcy Code. In his petition, Lutterbein listed as assets inventory, equipment and fixtures and work in progress which totaled Thirty-eight Thousand Dollars ($38,-000.00). This figure represented assets in the listed categories from both the floor covering and the picture framing portion of his business. At this time, Lutterbein had an outstanding debt to Eagle of Twenty-two Thousand Nine Hundred Seventy-five Dollars and Ninety-one Cents ($22,975.91).

On February 22, 1991, Lutterbein filed a Chapter 13 plan which stated that Debtor was surrendering the collateral to Eagle in full satisfaction of its claims. Debtor's intent was to return all floor covering inventories to Eagle in satisfaction of its claims.

On March 15, 1991, Eagle filed an Objection to the Plan Confirmation based upon the belief that they were entitled to all the inventory and work in progress of Debtor and not just those related to floor covering. Eagle also noted that the collateral surrendered could not be in total satisfaction of all claims because Eagle was entitled to file an unsecured claim for any amount not covered by the collateral.

Following a Hearing on the Objection, an Order Confirming the Plan was entered on July 18, 1991. Some confusion ensued concerning the disposition of Eagle's Objec-tion, and on September 5, 1991, the Objection was renewed. On October 17, 1991, the Order for Confirmation was Revoked. A further hearing was held on the objection, and the Court now renders its final decision on the Objection.

## LAW

■ The question before the Court is one of interpretation of the language of the financing statement and security agreement. Specifically, whether the collateral represented by the agreements entails all the inventory and work in progress of Debtor's business, or only that involved in the floor covering portion of the business. In answering this question, the Court looks to the foundations of contract law.

The primary focus is on whether the added words "floor covering" modify the phrase "work in process or inventory used or consumed in debtor's business." The question is essentially whether or not the term "floor covering" modifies every other clause of the sentence.

■ Where the meaning is doubtful so that the contract is susceptible to two constructions, the interpretation which makes a rational and probable agreement must be preferred. *Gibbons v. Schwind Realty Co.*, 25 Ohio L. Abstract 260, 262 (Ct.App. 1937). If possible, every provision in a contract should be held to have been inserted for some purpose and to perform some office, and an attempt must be made to harmonize, if possible, all provisions of a contract. *Ford Motor Co. v. Frazier & Sons Co.*, 29 Ohio Op.2d 379, 381 (Ct.App. 1964). "In harmonizing apparently conflicting clauses of a contract, they must be construed so as to give effect to the intention of the parties as gathered from the whole instrument, and where the object to be accomplished is declared in the instrument, the clause which contributes most essentially to that object will control." *Ray v. Lane Cotton Mills Co.*, 16 Ohio L. Abstract 711, 712 (Ct.App.1934); *see Mills–Carleton Co. v. Huberty*, 84 Ohio St. 81, 87–88, 95 N.E. 383 (1911). Therefore, anything in an agreement which conflicts with

the chief purpose therein must give way to the clause which makes the major intent effective. *Ford,* 29 Ohio Op.2d at 381.

From the testimony and documents filed in this case, the Court has determined that the intent of the parties when entering into the security agreement and financing statement was to include only the floor covering as collateral. The floor covering aspect of Debtor's business was the only part in which Eagle had a real interest. Eagle did not supply any of the picture framing materials used in the business. It seems clear from the insertion of the term "floor covering" at the beginning of the statement of what was included as collateral that the parties intended to limit the collateral to that floor covering.

It is inconsistent with the intent of the document to argue that only floor covering inventory was covered, but that later in the same sentence the collateral expanded to include *all* "work in process and inventory used or consumed in debtor's business." Since a finding of this sort would make ineffective the inclusion of the term "floor covering" at the opening of the statement, it is a construction which is not harmonious with either the apparent intent of the parties or even the contract itself when read as a whole.

As a result, the Court interprets the term "floor covering" as intended to modify the entire first sentence of the agreement. Therefore, the "work in process and inventory used or consumed in debtor's business" includes only those items involved in the floor covering aspect of Debtor's business. The items used in the picture framing portion of Debtor's business would not be included.

Eagle is correct in its statement that any difference between the amount of the claim and the value of the secured collateral is treated as an unsecured claim. 11 U.S.C. § 506(a). Therefore, following this ruling, Eagle may file an amended proof of claim to reflect any deficiency which may exist as an unsecured claim.

In reaching these conclusions, the Court has considered all the evidence and arguments of counsel, and the testimony of all witnesses appearing before the Court, whether or not they are specifically referred to in this opinion.

Accordingly, it is

ORDERED that the Objection to Confirmation of the Chapter 13 Plan brought by Eagle Flooring Distributors, Inc. be, and is hereby, DENIED.

It is FURTHER ORDERED that Eagle forthwith take possession of the designated collateral property and dispose of it in the appropriate manner and then file an amended proof of claim within fourteen (14) days as to any deficiency after the sale of the collateral.